**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ELENITA SIOZON, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | Civil Action No. AW-05-1803 |
| MICHAEL E. WYNNE,[1] | * | |
| Secretary of the Air Force, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \*

**MEMORANDUM OPINION**

Elenita Siozon ("Siozon" or "Plaintiff") brings this employment discrimination suit against

Michael Wynne in his capacity as Secretary of the United States Air Force (the "Air Force" or

"Defendant"). Siozon asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

1983, and the Federal Tort Claims Act. Currently pending before the Court is Defendant's Motion

to Dismiss or for Summary Judgment [9].  The Court has reviewed the entire record, as well as the

pleadings with respect to the instant motion.  No hearing is deemed necessary. *See* Local Rule 105.6

(D. Md. 2004).  For the reasons stated below, the Court will grant Defendant's Motion for Summary

Judgment.

**I.      FACTUAL & PROCEDURAL BACKGROUND**

The following facts are taken in the light most favorable to the non-movant. Siozon, a native

of the Philippines and a naturalized citizen of the United States, was employed as a Supervisory

---

[1]Although the Complaint named Michael L. Dominguez as the original defendant, Michael E. Wynne replaced Dominguez as Secretary of the Air Force effective November 3, 2005. Pursuant to Fed. R. Civ. P. 25(d)(1), Michael W. Wynne shall be substituted for Michael L. Dominguez as the defendant in this action.

Contract Specialist in the 89th Contracting Squadron at Andrews Air Force Base, Maryland, from December 2001 until her termination in November 2004. In September 2003, Siozon was arrested and charged with extortion for accepting thousands of dollars from Beverly Harris ("Harris"), a subordinate within the contracting squadron. Specifically, in September 2002, Siozon drove Harris to a bank near the base, where Harris withdrew $2,000 in cash and gave it to Siozon. One year later, in September 2003, Siozon accepted an additional $1,000 in cash from Harris. This time, however, federal law enforcement agents monitored the transaction, arresting Siozon soon after the money changed hands. Although she has never disputed accepting cash from Harris, Siozon maintains that Harris essentially forced the money upon her, citing their friendship and shared Christian faith, and that Siozon accepted it because of her sincere belief in "bulato," a Filipino custom of "gift offerings" and sharing of good fortune.[2]

After her arrest, Siozon was tried on one count of extortion in the U.S. District Court for the District of Maryland. *See United States v. Siozon-Peterson*, Criminal No. RWT-03-425. Siozon's employment with the Air Force was suspended during the pendency of the criminal proceeding. On May 18, 2004, Siozon was acquitted following a jury trial. On July 27, 2004, the Air Force proposed Siozon's removal from federal service for violating the government's Joint Ethics Regulation by accepting money from a subordinate. Siozon responded both orally and in writing, arguing that removal was unwarranted given her acquittal of criminal charges and overall record of service.

---

[2]In her testimony at Siozon's subsequent criminal trial, Harris painted a distinctly different picture, stating that shortly after she was hired, Siozon began demanding a portion of Harris's hiring bonus, claiming that she needed the money to pay expenses associated with a hit and run accident. Harris, concerned about the potential consequences to her career if she did not accede to Siozon's demands, agreed to relinquish the money. One year later, according to Harris, Siozon asked for more money, prompting Harris to notify the authorities.

Siozon also reiterated that she had been manipulated by Harris into accepting the money. Despite her protestations, on November 4, 2004, Siozon was removed from federal service. Siozon appealed her removal to the Merit Systems Protection Board ("MSPB"), alleging that she had been the victim of national origin discrimination. In a March 11,2005 pre-hearing conference, Siozon also alleged that she had been subjected to discrimination on the basis of her religion. On April 27, 2005, following a full administrative hearing, the Administrative Judge ("AJ") issued an initial decision. The AJ concluded that the Air Force had proven its charge by a preponderance of the evidence and that Siozon had failed to establish that her removal was motivated by discrimination on the basis of her national origin or religion. The AJ also ruled against Siozon with respect to her assertion that the Air Force had failed to reasonably accommodate her religious beliefs, finding that any accommodation claim was not timely raised. The AJ's initial decision became final on June 1, 2005, and this action followed.

## II.   SUMMARY JUDGMENT STANDARD

When matters outside the pleadings are presented to the court, a Rule 12(b)(6) motion to dismiss shall be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. *Nat'l Mortgage Warehouse, LLC v. Trikeriotis*, 201 F.Supp.2d 499, 502 (D. Md. 2002). Where a party knows that materials outside the pleadings are before the court, that party is considered to have notice that the motion to dismiss may be treated as a motion for summary judgment. *Id.* Both parties in this case present affidavits and/or other outside pleadings for the Court's consideration. As such, the Court will treat Defendant's motion as a Motion for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D. Md. 1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III.   ANALYSIS

### A.     Count I: Religious Discrimination

Count I of the Complaint alleges that Defendant failed to make a reasonable accommodation of Plaintiff's religious needs. In particular, Plaintiff claims that she accepted money from Harris because of her religious convictions,[3] and that "Defendant failed, refused, and neglected to make any

---

[3]According to the Complaint, "Siozon's religion is that of a Christian (Pentecostal), and she holds the sincere religious belief of 'gift offerings.'" (Compl. ¶ 13.) The Complaint also states, perhaps contradictorily, that Siozon "only accepted the money as a sharing of good fortune, or 'bulato,' a custom in her native Philippines." (*Id.* ¶ 31.)

reasonable accommodation for the religious needs of Plaintiff, despite the fact that any accommodation could have been implemented without any hardship on the conduct of Defendant's business." (Compl. ¶ 40.)

Defendant argues that Plaintiff's failure to accommodate claim must be dismissed because it was not timely raised in the administrative proceeding. Defendant points out that in the appeal form Plaintiff filed with the MSPB following her termination, she checked only the box titled "National Origin" as the basis for her claim of discrimination, despite the fact that "Religion" was clearly listed as an option. (Def.'s Ex. 5, at 9.) Plaintiff evidently made an effort to amend her MSPB petition to assert a religious discrimination claim, because the AJ determined in his Order and Summary of Prehearing Conference that one of the material issues in the appeal was whether "appellant prove[d] by preponderant evidence that her removal was discriminatory on the basis of her religion." (Def.'s Ex. 6, at 2.) However, the AJ went on to require that "[t]he appellant . . . identify her 'religion' and provide this information to the agency and the Board by March 22, 2005." (*Id.*) With respect to her religious accommodation claim, Plaintiff apparently did not, in the view of the AJ, adequately comply with this demand, because he noted in his April 27, 2005 Initial Decision that:

> [d]uring her closing statement, the appellant for the first time asserts that the agency failed to "make an accommodation" or her religion. . . . The appellant did not identify this theory of religious discrimination before or during the prehearing conference, and *I therefore find it untimely raised. . . .* In any event, there is no evidence that the appellant requested an "accommodation" of her religious practices.

(Def.'s Ex. 7, at 7 n.7) (emphasis added.) Thus, although Plaintiff brought a general allegation of religious discrimination to the AJ's attention, Plaintiff failed to particularize her religious

accommodation claim to the AJ's satisfaction, leading him to conclude that the claim was not timely raised. Plaintiff essentially ignores this finding in her opposition brief, where, relying on the AJ's reference to religion in his prehearing conference summary, she argues that the AJ "granted [her] motion" to amend her MSPB Petition to state a claim for religious discrimination. (Pl.'s Opp. at 8.) Plaintiff does not acknowledge the AJ's subsequent finding that by not further explicating her theory of religious discrimination, Plaintiff failed to timely raise a religious accommodation claim.

Title VII requires a plaintiff to exhaust her administrative remedies—generally by filing a charge with the Equal Employment Opportunity Commission ("EEOC")—before bringing an employment discrimination complaint to federal court. *See* 42 U.S.C. § 2000e-5(b); *Chacko v. Patuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005); *Bryant v. Bell Atl. Md., Inc*, 288 F.3d 124, 132 (4th Cir. 2002). This exhaustion requirement applies with equal force in the context of a federal employee challenging an MSPB decision. *See Harris v. Evans*, 66 Fed. Appx. 465, 467 (4th Cir. 2003) (per curiam) (unpublished) ("[plaintiff] failed to exhaust her administrative remedies by not submitting her claim to the MSPB"); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 610-11 (D. Md. 2003) (holding that plaintiff who withdrew certain discrimination claims at the end of her MSPB hearing had failed to exhaust administrative remedies with respect to those claims and was barred from pursuing them in federal court).

In the instant case, Plaintiff made absolutely no mention of religious discrimination in the appeal form she filed with the MSPB. Instead, Plaintiff claimed that she had been discriminated against on the basis of her national origin, specifically alleging that she is a native of the Philippines and that her manager "discount[ed her] contributions in staff meetings," "talk[ed] around her to subordinates," and "discredit[ed] her with the comment that he couldn't understand her." (Def.'s Ex.

5, at 10.) Plaintiff did not allege that any of her superiors were aware of her religion, discriminated against her on the basis of religion, or refused to accommodate her religious beliefs. As reflected in the AJ's Order and Summary of Prehearing Conference, Plaintiff subsequently raised a general allegation of religious discrimination, which the AJ found, in his Initial Decision, to be without merit. The AJ observed that although Plaintiff had testified that she had been discriminated against because she was a Pentecostal Christian, "[s]he did not assert . . . that any agency management officials . . . were aware of her religion or treated her differently because of it. Neither did [Plaintiff] identify any comparative employees who were not Pentecostal." (Def.'s Ex. 7, at 7.) In addition, the AJ found that Plaintiff did not raise the claim presently before this Court—i.e., Plaintiff's assertion that Defendant failed to reasonably accommodate her religious beliefs—until her closing statement. The AJ then concluded that because Plaintiff had not "identif[ied] this theory of religious discrimination before or during the prehearing conference," her religious accommodation claim was untimely. (*Id.* at 7 n.7.)

In light of the above, this Court finds that Plaintiff has failed to exhaust administrative remedies with respect to her religious accommodation claim. As Plaintiff explains in her opposition, "[r]eligious discrimination claims fall into two general categories: disparate treatment based on religion and failure to accommodate religious needs." (Pl.'s Opp. at 11.) In her Complaint, Plaintiff asserts only a failure to accommodate claim. In the MSPB proceeding, however, Plaintiff did not raise her failure to accommodate claim until her closing statement. This lack of diligence precluded the AJ from conducting a thorough review of Plaintiff's religious accommodation claim, which is

governed by a legal framework distinct from that employed to evaluate disparate treatment claims.[4]

Title VII discrimination claims that are based on diverse legal theories from those pursued at the administrative level must be dismissed for failure to exhaust administrative remedies. *See, e.g., Taylor v. Virginia Union University*, 193 F.3d 219, 239 (4 th Cir. 1999) (holding that plaintiff failed to exhaust administrative remedies with respect to claim of sexual harassment because her EEO complaint only alleged gender discrimination); *Riley v. Technical and Management Servs. Corp.*, 872 F. Supp. 1454, 1459 (D. Md. 1995) (same), *aff'd*, 79 F.3d 1141 (4th Cir. 1996).

In addition, even if Plaintiff's religious accommodation claim were properly before the Court, it is apparent that Plaintiff would be unable to make out a prima facie case of failure to accommodate. To avoid summary judgment, Plaintiff would be required to demonstrate that: (1) she has a bona fide religious belief that conflicts with an employment requirement; (2) she informed the employer of this belief and requested an accommodation thereof; and (3) she was disciplined for failure to comply with the conflicting employment requirement. *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996). Here, even assuming that Plaintiff holds a bona fide religious belief requiring her to accept substantial monetary payments from her subordinates, there is no indication that plaintiff sought an accommodation of this alleged belief prior to the sting operation that resulted in her arrest. To excuse an employee's violation of obvious, fundamental, and well-

---

[4]In order to prove a claim of disparate treatment religious discrimination, a plaintiff must demonstrate that her "employer treated her differently than other employees because of her religious beliefs," which may be satisfied by a showing that "the employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in the same conduct." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996). To establish a prima facie religious accommodation claim, a plaintiff is required to demonstrate that: (1) she has a bona fide religious belief that conflicts with an employment requirement; (2) she informed the employer of this belief and requested an accommodation thereof; and (3) she was disciplined for failure to comply with the conflicting employment requirement. *Id.* at 1019.

established employment regulations on the basis of a religious tenet invoked only *after* the employee's transgressions have been discovered would be to make an absolute mockery of the religious accommodation doctrine. Furthermore, even if Plaintiff had met her burden of setting forth a prima facie case, Defendant would have the opportunity to show that it could not reasonably accommodate Plaintiff's religious needs without undue hardship. *Chalmers*, 101 F.3d at 1019. Plaintiff advances no credible argument, nor can this Court conceive of any, that her professed religious belief in the acceptance of "gift offerings," which apparently encompasses the receipt of large amounts of cash from subordinate employees, can be reconciled with federal ethics regulations that expressly prohibit such conduct. Thus, for the reasons stated above, Defendant is entitled to summary judgment with respect to Plaintiff's religious accommodation claim.

### B. Count II: National Origin Discrimination

Plaintiff alleges that she was subjected to national origin discrimination by her supervisor, Lt. Col. Douglas P. Constant ("Constant"). In particular, Plaintiff claims that:

> In 2003, during workplace meetings, Constant undermined [Plaintiff's] authority in the squadron by "overlooking" her in the presence of her subordinates because of her national origin.

> [Plaintiff], who speaks fluent English, perceived Constant as having a problem with her accent, and that he indicated he could not understand her, although she did not have problems communicating with other personnel in the squadron.

(Compl. ¶¶ 44-45.) Defendant counters that the allegations recited above, which constitute the sum total of Plaintiff's national origin discrimination claims, are insufficient as a matter of law to state a prima facie case of employment discrimination, because these alleged harms do not rise to the level of adverse employment actions.

In order to establish a prima facie case of employment discrimination, Plaintiff must show

that: (1) she is a member of a protected class; (2) she had satisfactory job performance; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside her class received more favorable treatment. *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). In determining whether a plaintiff has been subjected to an adverse employment action, courts have traditionally focused on whether there has been discrimination in such ultimate decisions as hiring, granting leave, discharging, promoting, and compensation. *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th Cir. 1999). While conduct short of such "ultimate" decisions can constitute a tangible employment action, "Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment." *Id.* As the Fourth Circuit has explained, a plaintiff in a Title VII case must establish "that the challenged discriminatory acts or harassment adversely affected the terms, conditions, or benefits of the plaintiff's employment." *Von Gunten v. Maryland*, 243 F.3d 858, 856 (4th Cir. 2001) (internal citations and quotation marks omitted).

Even construed in the light most favorable to Plaintiff, her allegations that she was "overlooked" in the presence of subordinates and that she "perceived" her supervisor as "having a problem with her accent" simply do not rise to the level of actionable Title VII claims. *See, e.g., Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004) (plaintiff's claims that he received negative evaluation and was ostracized by certain employees do not rise to the level of adverse employment actions); *Munday v. Waste Mgmt. of North America, Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (allegations that plaintiff's supervisor yelled at her, directed other employees to ignore her and to spy on her, and generally refused to communicate with her were not actionable under Title VII); *Caussade v. Brown*, 924 F. Supp. 693, 702 (D. Md. 1996) (disparaging comments about plaintiff's accent did not amount to adverse employment action).

The fact that Plaintiff was terminated from her position does not, in this case, affect the Court's analysis. Although dismissal is the quintessential adverse employment action, Plaintiff has not shown that her supervisor, Constant, against whom all of Plaintiff's allegations of discrimination are lodged, had anything to do with her removal from federal service. Defendant has established that the proposing official for Plaintiff's removal was Captain John D. Del Barrio, that the deciding official was Colonel James. J. Brackett, and that the specific reason cited for Plaintiff's removal was that she "violat[ed] the Joint Ethics Regulation by accepting a substantial amount from a subordinate employee on at least 2 separate occasions." (Def.'s Exs. 2, 4.) Plaintiff's speculation that "her removal from the Federal service was related by [sic] Constant's discrimination" and that there is "a reasonable inference that Constant's attitude and demeanor contributed, rather significantly, to her removal," (Pl.'s Opp. at 10), finds no support in the record and is insufficient to overcome summary judgment. Furthermore, even if Plaintiff were able to establish a prima facie case of discriminatory discharge,[5] the burden would shift to Defendant to articulate a legitimate, nondiscriminatory for Plaintiff's removal, which Plaintiff would then be required to show was merely a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff's violation of core government ethics regulations provided Defendant with a legitimate, nondiscriminatory reason to dismiss her, and Plaintiff has not show that this reason was pretextual. Accordingly, the Court will enter summary judgment for Defendant on Plaintiff's national origin discrimination claim.

---

[5]This is a dubious proposition, given that Plaintiff would have to demonstrate that she was a member of a protected class, that she suffered an adverse employment action, that her job performance was satisfactory, and that her position was filled by a similarly qualified applicant outside the protected class, *see King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003), and Plaintiff has presented no evidence to satisfy her burden of proving the latter two requirements.

**C.**        **Count III: Constitutional Claims Under § 1983**

Count III of the Complaint asserts a claim under 42 U.S.C. § 1983 for alleged deprivation of Plaintiff's First and Fifth Amendment constitutional rights. Count III arises from the same allegations that support the employment discrimination claims asserted in Counts I and II. Defendant argues that Count III should be dismissed because Title VII provides the exclusive remedy for a federal employee's claims of employment discrimination. This Court agrees. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (holding that Title VII "provides the exclusive remedy for claims of discrimination in federal employment"); *Pueschel v. United States*, 369 F.3d 345, 353 (4th Cir. 2004) (affirming dismissal of employment discrimination claims brought under the Federal Tort Claims Act because Title VII provides federal employees their exclusive remedy for employment discrimination); *Middlebrooks v. Thompson*, 379 F. Supp. 2d. 774, 777 (D. Md. 2005) (dismissing claim under 42 U.S.C. § 1981 because "it is clear that Title VII represents the exclusive remedy for federal sector employees who wish to pursue claims of intentional discrimination in employment"); *Carlson v. U.S. Dept. of Health and Human Servs.*, 879 F. Supp. 545, 549 (D. Md. 1995) (disposing of plaintiff's Fifth Amendment claim because, as a federal employee, Title VII provided the exclusive remedy for her employment discrimination claims).

The cases Plaintiff cites in her opposition brief for the proposition that her claims are cognizable under both Title VII and § 1983,  *see* Pl.'s Opp. at 7 (citing *Beardsley v. Webb*, 30 F.3d 524 (4th Cir. 1994); *Keller v. Prince Georges County*, 827 F.2d 952 (4th Cir. 1987)), are inapposite, in that those cases involved state and municipal, rather than federal, employees. *See Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 301 (7th Cir. 1985) (highlighting the distinction between state and federal employees in evaluating whether Title VII provides exclusive remedy for employment

discrimination claims). Thus, because Title VII constitutes the exclusive remedy for Plaintiff's allegations of employment discrimination by an agency of the federal government, Defendant is entitled to summary judgment on Plaintiff's § 1983 claim.

### D.  <u>Count IV: Intentional Infliction of Emotional Distress</u>

In Count IV, Plantiff asserts a cause of action for the common law tort of intentional infliction of emotional distress. It is well-settled that lawsuits seeking money damages against the United States are barred by the doctrine of sovereign immunity, except to the extent that the United States waives its sovereign immunity and consents to be sued. *United States v. Testan*, 424 U.S. 392, 399 (1976). The Federal Tort Claims Act ("FTCA") is the exclusive waiver of sovereign immunity for tort claims against the United States. *See* 28 U.S.C. § 2671 *et seq.*

The FTCA requires an injured party to present his claim to the appropriate federal agency before filing suit against the United States. Section 2675(a) states:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency.

Accordingly, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies. *McNeil v. United States*, 508 U.S. 106, 112, 113 (1993); *see Perkins v. United States*, 55 F.3d 910, 913 (4th Cir. 1995). The exhaustion requirement is jurisdictional and may not be waived. *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986).

Here, Plaintiff alleges that Defendant wrongfully terminated her employment and that Defendant is liable for this tortious conduct. Therefore, Plaintiff's claims fall within the scope of the FTCA. Plaintiff, however, has presented no evidence to suggest that she exhausted her remedies,

per the requirements of the FTCA, by filing a tort claim with the appropriate Federal agency.[6]

Additionally, Defendant submits the Declaration of Colonel Gregory Girard, Chief, Tort Claims and

Litigation Division, Air Force Legal Services Agency, United States Air Force. Col. Girard states

that he has reviewed the FTCA administrative claims received by the Air Force from October 1994

to present, and that Plaintiff has not filed an administrative tort claim under the FTCA.

 Consequently, the Court finds that Plaintiff has not exhausted her remedies under the FTCA.

As a result, Plaintiff's claim for intentional infliction of emotional distress must be dismissed for

lack of subject matter jurisdiction.

## IV. CONCLUSION

 For all of the aforementioned reasons, Defendant's Motion for Summary Judgment [9] is

GRANTED. An Order consistent with this Opinion will follow.


June 15, 2006       /s/
Date         Alexander Williams, Jr.
           United States District Judge

---

[6]Albeit creative, Plaintiff's arguments that her claims are not subject to the requirements of the FTCA have no merit. Briefly summarized, Plaintiff's position is that because she was charged with extortion in the underlying criminal proceeding, and because extortionists often rely upon the threat of force to accomplish their ends, and because 28 U.S.C. § 2680(h) exempts from the FTCA torts stemming from assault and battery, then Plaintiff's instant tort claims are exempted from the FTCA's exhaustion requirement. However, even if the Court were inclined to accept this fanciful analogy, Plaintiff's argument still fails. Section 2680(h) does not, as Plaintiff contends, enumerate the torts exempted from the FTCA's exhaustion requirement, but rather those actions for which the FTCA's limited waiver of sovereign immunity does not apply. Thus, tort claims based on the acts listed in § 2680(h), among them assault and battery, are simply not cognizable under the FTCA. *See Talbert v. United States*, 932 F.2d 1064, 1066 (4th Cir. 1991).